UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MICHAEL C. MILNER, | ) | CASE NO: 3:16CV2490 |
| | ) | |
| Petitioner, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| NEIL TURNER, Warden, | ) | |
| | ) | Report and Recommendation of |
| | ) | Magistrate Judge |
| Respondent. | ) | |

On October 4, 2016, Petitioner, Michael C. Milner ("Petitioner"), pro se, executed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, which was filed with this Court on October 11, 2016.  ECF Dkt. #1.  He seeks relief for alleged constitutional violations that occurred during the guilty plea that he entered in the Erie County, Ohio Court of Common Pleas for aggravated murder.  *Id.*

On February 22, 2017, Respondent Neil Turner, Warden of the North Central Correctional Complex where Petitioner is housed, filed a Return of Writ.  ECF Dkt. #11.  Petitioner filed a Traverse on March 24, 2017.  ECF Dkt. #13.  For the following reasons, the undersigned recommends that the Court dismiss Petitioner's federal habeas corpus petition in its entirety with prejudice.  ECF Dkt. #1.

**I.  SYNOPSIS OF THE FACTS**

The Sixth District Court of Appeals of Ohio set forth the facts of this case on direct appeal. These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-361 (6th Cir. 1998), *cert. denie*d, 119 S.Ct. 2403 (1999).  As set forth by the Ohio Court of Appeals, the facts are:

> The following undisputed facts are relevant to this appeal.  This case stems from the July 30, 2012 beating death via multiple blunt force trauma of a three-year-old boy in his home located in Sandusky, Ohio.
>
> The matter came to the attention of authorities when Firelands Hospital emergency room personnel contacted the Sandusky Police Department in connection to the

fatally injured boy who had just been transported to the hospital by the Sandusky Fire Department.

The circumstances culminating in the death of the boy stem from the victim's mother cohabitating with appellant. Appellant possesses an extensive history of criminal conduct, multiple investigations of appellant for abuse against the toddler, and substance abuse.

With respect to the day of this event, on July 30, 2012, appellant and the boy were at home in the Sandusky apartment they shared with appellant's girlfriend, the mother of the boy. The mother was not present.

Appellant perceived that the boy had gotten into a bag of appellant's narcotic pills and possibly lost or misplaced some of them. Appellant powerfully, repeatedly struck and threw the boy about until the child was deceased. The medical evidence reflects that appellant waited several hours prior to seeking medical attention for the already deceased child.

The responding firemen observed the boy to be cold to the touch upon their arrival, not breathing, and exhibited blue colored lips. They further noted that the boy possessed extensive bruising and abrasions on his face, head, and chest. The Lucas County coroner's office subsequently investigated the boy's death and performed an autopsy.

It determined the boy's death to be homicide by multiple blunt force trauma inflicted through beating by another person. The fatal and extensive injuries precipitating the boy's death included a perforated right atrium of the heart, a lacerated liver, a lacerated mesentery artery, bilateral pulmonary contusions, multiple contusions and abrasion on the boy's face and head, and multiple abrasions on the boy's genitalia.

Notably, during the course of the investigation, the record reflects that appellant and the boy's mother, a co-defendant in this matter, furnished investigators a lengthy litany of false, inconsistent, and clearly untenable explanations for the boy's fatal injuries. The proffered explanations of the boy's violent death ranged from the boy somehow sustaining a fatal injury from falling onto a plastic toy truck, to the boy passing out and falling down, to claims that the injuries were sustained from performance of the Heimlich maneuver.

Significantly, the record further reflects a history of child abuse investigations by personnel from children's services involving appellant and the boy prior to this fatal incident. The record further reflects that appellant and the co-defendant failed to fully cooperate or be forthcoming in these prior abuse investigations.

On August 15, 2012, appellant was indicted on one count of aggravated murder, in violation of R.C. 2903.01(C), an unclassified felony, one count of murder, in violation of R.C. 2903.02(B) a felony of the first degree, one count of felonious assault, in violation of R.C. 2903.11(A), a felony of the second degree, and one count of endangering children, in violation of R.C. 2919.22(B), a felony of the second degree.

On May 28, 2014, pursuant to a voluntarily negotiated plea agreement, appellant pled guilty to the one count of aggravated murder, in violation of R.C. 2903.01(C), an unclassified felony. In exchange, the death penalty specification and the three other pending felony charges against appellant were dismissed. In addition, appellee agreed to not request that the trial court impose the maximum sentence of life in

prison without the possibility of parole. Expert witnesses were furnished to appellant and proffered potentially mitigating evidence on his behalf prior to sentencing. Multiple witnesses, both expert and lay, spoke at great length on appellant's behalf prior to sentencing. A presentence investigation was conducted and considered at sentencing. Victim impact testimony was also heard.

The record reflects an exceptionally exhaustive colloquy by the trial court both at the change of plea hearing and also at the sentencing hearing itself. Notably, the trial court explicitly inquired of appellant multiple times if he understood that the trial court was not required to follow any sentencing recommendations and that the trial court was free to impose the maximum sentence regardless of lesser sentencing recommendations. Appellant repeatedly and unequivocally affirmed his understanding. The record reflects precise and lengthy exchanges between the trial court and appellant to ensure the propriety of the plea.

Likewise, the record similarly reflects that the two-day sentencing hearing furnished appellant ample opportunity for the numerous expert and lay witnesses to provide information on appellant's behalf. Notably, both a clinical and forensic psychologist and a mitigation specialist were provided to appellant. Despite appellant's affirmations that he understood that there were no assurances of a less than maximum sentence being somehow guaranteed, appellant now disputes the legitimacy of that outcome.

The record reflects that appellant possesses a lengthy history of criminal conduct, violence, and substance abuse. The record reflects that appellate was investigated multiple times for physically harming the victim prior to the incident in which the victim was killed. The record reflects that appellant consistently failed to be forthright. The record reflects that appellant spun endless false versions of the events. Notably, appellant even blamed the three-year-old victim as somehow being culpable for his own death by multiple blunt force trauma.

The record reflects that the victim's beating death was so severe and prolonged that the child suffered a litany of internal injuries that proved to be fatal, as well documented by the Lucas County coroner's office. Appellant's troubling failure to take accountability is reflected in appellant's repeated theme that he just is allegedly always a victim of "bad luck." Appellant apparently believed that his own difficult childhood would automatically mitigate sentencing.

The record reflects that the trial court conducted an exhaustive multi-day sentencing hearing at which numerous mitigating and aggravating witnesses and evidence was heard and considered. The trial court properly noted appellant's history of recidivism, failure to take accountability, failure to change despite attempts by many agencies and parties over the years to assist appellant, and the significant danger posed to society by appellant in the course of imposing a maximum sentence of life in prison without possibility of parole. This appeal ensued.

ECF Dkt. #11-1 at 119-124.

## II.    PROCEDURAL HISTORY

### A.    State Trial Court

In its January/August 15th session in 2012, the Erie County, Ohio Grand Jury indicted

Petitioner for: one count of aggravated murder of a person under the age of thirteen in violation of

-3-

Ohio Revised Code ("ORC") § 2903.01(C) with a death penalty specification; one count of murder in violation of ORC § 2903.02(B); one count of felonious assault in violation of ORC § 2903.11(A)(1); and one count of endangering children in violation of ORC § 2919.22(B)(2). ECF Dkt. #11-1 at 4-6.

On May 28, 2014, Petitioner entered into a plea agreement whereby he pled guilty to the first count of aggravated murder and the State dismissed all of the other counts and the death penalty specification. ECF Dkt. #11-1 at 8-9. Petitioner and his counsel signed the plea agreement, which set forth the rights that Petitioner was waiving by pleading guilty, the charge to which Petitioner was pleading guilty, the charges that the State would dismiss as a result of the guilty plea, the maximum penalties that Petitioner was facing, and the agreement that the State would not argue or request a sentence of life without parole and would request that the trial court impose one of the other options besides the life without parole sentence. *Id.* at 9.

On August 8, 2014, the trial court issued a judgment entry indicating that a sentencing hearing was held on that date and Petitioner and his counsel were present, as well as assistant prosecutors on behalf of the State of Ohio. ECF Dkt. #11-1 at 14. The court noted in the entry that Petitioner was notified of his rights and the entry set forth the applicable sentencing criteria considered by the court and the court's findings. *Id.* at 14-15. The court sentenced Petitioner on life in prison without the possibility of parole. *Id.* at 17.

**B**. **Direct Appeal**

On September 2, 2014, Petitioner filed a notice of appeal and asserted the following assignments of error in his appellate brief:

> 1. The court erred by failing to abide by the plea bargain.
>
> 2. The court erred when it imposed the maximum sentence without making all of the required statutory findings.
>
> 3. The court erred by ignoring the mitigating factors filed by counsel and presented at the sentencing hearing.
>
> 4. The court erred when it considered items at the sentencing hearing that were not in the record.
>
> 5. The court erred when it imposed court costs.

-4-

ECF Dkt. #11-1 at 32-60.  The State of Ohio filed an appellate brief.  *Id*. at 79-107.

On June 19, 2015, the Ohio appellate court addressed Petitioner's assignments of error and affirmed the trial court's judgment. ECF Dkt. #11-1 at 118-129.

### C.      Ohio Supreme Court

On August 6, 2015, Petitioner, pro se, filed a notice of appeal to the Supreme Court of Ohio.  ECF Dkt. #11-1 at 130-145.  In his memorandum in support of jurisdiction, Petitioner raised the following propositions of law:

> Proposition of Law I: The Defendant-Appellants[sic] Fourteenth Amendment Rights of Due Process of Law and Equal Protection of Law was[sic] violated when the Courts failed to abide by the negotiated plea agreement and ruled contrary to the United States Supreme Court ruling in *Santabello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed2d 427.

> Proposition of Law II: The Defendant-Appellants[sic] Fourteenth Amendments Rights of Due Process of Law was[sic] violated when the Courts failed to find the required statutory findings on the record pursuant to O.R.C. § 2929.19.

> Proposition of Law III: The Defendant-Appellants[sic] Fourteenth Amendment Rights of Due Process of Law was[sic] violated when the Court failed to use mitigating factors presented by the defendant at the sentencing hearing.

> Proposition of Law IV: The Defendant-Appellants[sic] Fourteenth Amendment Rights of Due Process of Law was[sic] violated when the Court used evidence at sentencing that is not part of the record.

> Proposition of Law V: The Defendant-Appellants[] Fourteenth Amendment Rights of Due Process of Law and Equal Protection of law was[sic] violated when the Court imposed courts costs.

*Id.*  The State filed a memorandum in opposition of jurisdiction on August 25, 2015.  *Id.* at 158-177.  Petitioner filed a motion to stay judgment in the Ohio Supreme Court on October 14, 2015, requesting that the court stay judgment in his case until he filed a petition for post-conviction relief.  *Id*. at 178-179.  The State of Ohio filed an opposition brief.  *Id*. at 181-183.

On October 28, 2015, the Supreme Court of Ohio declined jurisdiction of Petitioner's appeal.  ECF Dkt. #11-1 at 186.  The court thereafter denied as moot Petitioner's motion to stay judgment.  *Id*. at 187.

### D.      State Post-Conviction

On January 4, 2017, Petitioner filed an application for delayed reopening of his appeal pursuant to Rule 26(B) of the Ohio Rules of Appellate Procedure in the Sixth District Court

-5-

of Appeals.  ECF Dkt. #11-1 at 188.  He asserted as good cause for his delay in filing an appeal as the fact that he was not a lawyer and was not aware of filing requirements and he did not discover the error made during his plea hearing until right before he filed the state post-conviction petition.  *Id*.  As to the ineffectiveness of appellate counsel, he asserted that his appellate counsel was ineffective by allowing him to participate in a void guilty plea hearing.  *Id*. at 191.  Petitioner contended that the acceptance of his guilty plea at the hearing was void because it was illegally taken before one judge rather than a three-judge panel.  *Id*. at 191.

The State of Ohio filed a response to the application on January 5, 2017 and Petitioner filed a reply brief on January 19, 2017.  ECF Dkt. #11-1 at 197-216.

On January 26, 2017, the Ohio appellate court issued a decision denying Petitioner's application for delayed reopening on the basis of ineffective assistance of appellate counsel.  ECF Dkt. #11-1 at 217-220.  The court held that because the death penalty specification was dismissed, the relevant Ohio statute requiring a three-judge panel was inapplicable and thus counsel did not perform deficiently in failing to object or raise the issue on appeal.  *Id.*

Petitioner filed a notice of appeal of the Ohio appellate court's decision on March 10, 2017.  In his memorandum in support of jurisdiction, Petitioner asserted the following propositions of law:

>    1.    The Defendant-Appellant's rights to Due Process and Equal Protection of Law were violated when the trial court violated R.C. 2945.06 and Crim.R. 11(C)(3) by not having a three-judge panel take his guilty plea to aggravated murder when the death penalty specification was still present.

*See* http://www.sconet.state.oh.us/Clerk/ecms/#/caseinfo/2017/0349.

On May 31, 2017, the Supreme Court of Ohio issued an opinion declining jurisdiction over Petitioner's appeal.  *See* http://www.sconet.state.oh.us/Clerk/ecms/#/caseinfo/2017/0349.

### III.    28 U.S.C. § 2254 PETITION

On October 4, 2016, Petitioner, pro se, executed the instant petition for a writ of federal habeas corpus, which was filed in this Court on October 11, 2016.  ECF Dkt. #1.  Petitioner raises the following grounds for relief:

GROUND ONE:

Petitioner was denied his VI Amendment right to counsel in his death penalty specification case at the arraignment contrary to law and constitutional right.

Supporting Facts: Petitioner was not appointed counsel until after his arraignment hearing on 08-30-12. This violates his VI Amendment right to counsel in a death penalty specification case contrary to both Ohio and federal law which says counsel shall be appointed at all critical stages of a proceeding. Petitioner's attorney, Carla Marable, did not submit her motion for admission Pro Hac Vice until 08-30-16, the date of the arraignment of Petitioner. The court cannot assume a waiver of counsel by Petitioner based on the silence in the record. The record also does not record a written waiver of counsel at this hearing.

GROUND TWO:

Petitioner's XIV Amendment rights to due process & equal protection of law were violated when the court failed to abide by the plea agreement contrary to Santobello v. N.Y.

Supporting Facts: The court failed to abide by the plea agreement which stated that the defense, prosecution, and victim's family were all opposed to the sentence of life without the possibility of parole. Despite all of this opposition to this sentence, the judge denied Petitioner's rights to due process and equal protection under the law per the XIV Amendment when he imposed the sentence of life without the possibility of parole despite the opposition of all other parties in this proceeding contrary to the law as cited by the U.S. Supreme Court in Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 because Petitioner believed he would receive a sentence of 20, 25, or 30 years incarceration with the possibility of parole.

GROUND THREE:

Petitioner's XIV Amendment rights to due process & equal protection of law were violated when the Court failed to make findings per R.C. 2929.19 to impose maximum term.

Supporting Facts: The trial judge did not make the required findings of R.C. 2929.19 when he imposed the maximum sentence of life without the possibility of parole in this case. Ohio law says that under R.C. 2929.19 the court must make findings of the record that the offender committed one of the worst forms of the offense or posed the greatest likelihood of recidivism. The judge in his failure to make these findings is fatal to the maximum sentence imposed, & this court should accept jurisdiction as said in: U.S. v. Hockenberry, 730 F.3d 645, (6th Cir. 2013); Williams v. Burkes, 2014 U.S. Dist. LEXIS 56541 (S.D. Ohio, 2014); & U.S. v. Grier, 475 F.3d 556.

GROUND FOUR:

Petitioner's rights to due process & equal protection of law under the XIV Amendment were violated when the court failed to use mitigating factors at sentencing.

-7-

Supporting Facts:

The trial judge violated Petitioner's XIV Amendment rights to due process & equal protection of law at the sentencing hearing by failing to use mitigating factors contrary to Ohio and federal law. Trial counsel filed a motion listing 21 mitigating factors for Petitioner, along with a report from Dr. Kaplan, a clinical and forensic psychologist. The trial judge did not refer to any of these 21 factors at sentencing. Dr. Kaplan had researched 4500 pages of records, but the court ignored his research. This sentence should be reversed per United States v. Castro, 704 F.3d 125 (3rd Cir. 1/8/13) & Woodward v. Alabama,
134 S.Ct. 405, 187 L.Ed.2d 449 (Dissent by Sotomayer p. 411, 9/18/13).

GROUND FIVE:

Petitioner's rights to due process & equal protection of law under XIV Amendment were violated when the court erred by considering items at the sentencing hearing that were not in the record.

Supporting Facts:

The trial judge violated Petitioner's XIV Amendment rights to due process & equal protection of law by considering items at the sentencing hearing that were not in the record. Specifically the trial judge mentioned a Florida matter, the Lucas County Coroner's report (Dr. Schlievert), Petitioner's alleged letter while in jail that contained a white powder that tested negatively for drugs, contraband at the county jail, a fight in the county jail involving Petitioner, alleged hearsay comment from Petitioner's prior attorney (a clear violation of attorney-client privilege), and Laura Santini's comments. There is no foundation in the record for any of these items. Therefore all of this alleged hearsay should not have been brought up at sentencing, and the sentencing judge abused judicial discretion.

GROUND SIX:

Petitioner's rights to due process & equal protection of law under XIV Amendment were violated when the court erred by refusing to rule on Petitioner's motion to dismiss the specification of aggravating circumstances to Count One.

Supporting Facts:

The trial judge refused to rule on Petitioner's Petitions to dismiss the specification of aggravating circumstance to Count One that was filed on May 5, 2014. (See record). Petitioner was charged with a violation of the so-called child victim subsection of R.C. 2903.01, the aggravated murder statute: "No person shall purposely cause the death of another who is under thirteen years of age at the time of the commission the offense." R.C. 2903.01. In addition to this underlying charge, the prosecuting attorney obtained a death penalty specification under R.C. 229.04(A)(9) without the addition of a single new element. Thus denying Petitioner his right of due process & equal protection of law. The State is assuming that Petitioner is the principal offender based only on Prosecutor's assumption of this allegation. In other words Petitioner is charged with murder of a child with one penalty being life in prison, the other death in an arbitrary manner with no equal protection or

-8-

> due process of law.  This arbitrary law also violates Petitioner's Eighth Amendment right against cruel and unusual punishment in that it does not narrow the class of people eligible for the death penalty.  This error of law was  compounded by the trial judge refusing to rule upon this motion.

ECF Dkt. #1 at 5-14.  On February 22, 2017, Respondent filed a Return of Writ.  ECF Dkt. #11.  On March 24, 2017, Petitioner filed a Traverse.  ECF Dkt. #13.

## IV.    PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "[p]rocedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

### A.    Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final.  28 U.S.C. § 2244(d)(1).  The AEDPA statute of limitations is not currently at issue in this case.

### B.    Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).  To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court."  *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated.  *McMeans*, 228 F.3d at 681 citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984).

-9-

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims. *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law. *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993) cert. denied, 509 U.S. 907 (1993)(quotation omitted).

## C.    Procedural Default

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman v. Thompson,* 501 U.S. 722, 730, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (emphasis removed). When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991). In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

-10-

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted under *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule.  *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991).  Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims.  *Coleman,* 501 U.S. at 729-30; *Richey*, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises).  Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision.  *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004).  Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation.  *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985).  If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice.  *Smith v. Murray*, 477 U.S. 527 (1986).

Simply stated, a federal court may review federal claims:

> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004).

The above standards apply to the Court's review of Petitioner's claims.

**V.**      **STANDARD OF REVIEW**

If Petitioner's claims overcome the procedural barriers, the AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 well after the act's effective date of April 26, 1996. *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998). Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus. The AEDPA provides:

> (d)      An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)      resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added). In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue

-12-

the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Duttion*, 785 F.2d 131, 133 (6th Cir. 1986).   The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

> (e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e).  The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact. *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993).  The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997).  Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law. *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## VI.  LAW AND ANALYSIS

### A.  GROUND FOR RELIEF NUMBER 1- MERITLESS

Respondent asserts that Petitioner by admission has not exhausted this Ground for Relief, this Ground for Relief is waived due to Petitioner's voluntary, knowing and intelligent guilty plea, and/or it is plainly without merit.  ECF Dkt. #11 at 13-14, 16-17, 26.  For the following reasons, the undersigned bypasses Respondent's procedural assertions, although they appear to be correct, and recommends that the Court find that Petitioner's first ground for relief is utterly without merit.

Petitioner asserts in his first ground for relief that he was not appointed counsel until after his arraignment hearing on August 30, 2012, which violated his constitutional rights.  ECF Dkt. #1 at 5-6.  Petitioner is correct that the Sixth Amendment right to counsel attaches "at or after the initiation of adversary criminal proceedings – whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *McNeil v. Wisconsin*, 501 U.S. 171, 175, 111 S.Ct. 2204, 115 L.Ed. 158 (1991).  Thus, Petitioner was entitled to have counsel appointed and present during his arraignment.

The undersigned recommends that the Court find that Petitioner was indeed appointed counsel and had counsel present during his arraignment.  The Arraignment Judge Entry of the trial court in Petitioner's case dated August 30, 2012 specifically states that Petitioner appeared with counsel and identified his counsel by name. ECF Dkt. #11-1 at 7.  Moreover, Petitioner never raised such an issue prior to the instant federal habeas corpus petition. ECF Dkt. #11-1 at 39, 133. 190-192.  For these reasons, the Court should find no merit to Petitioner's first ground for relief.  The Court should also decline to address the entirely different issue relating to counsel in his Traverse as he asserts that he was not sure if his appointed counsel was death-penalty certified. ECF Dkt. #13 at 6.  The Sixth Circuit has held that a district court does not commit error when it declines to address claims first raised in a Traverse because a Traverse is not the proper vehicle to raise new claims.  *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005); *Myers v. Haviland*, No. 3:16-CV-659, 2017 WL 9476855, at *18 (N.D. Ohio May 8, 2017).

### B.    GROUND FOR RELIEF NUMBER 2- MERITLESS

In his second ground for relief, Petitioner alleges that the trial court breached the plea agreement by sentencing him to life imprisonment without the possibility of parole.  ECF Dkt. #1 at 7.  Respondent asserts that this ground for relief is frivolous and the Ohio appellate court's decision is otherwise entitled to deference under 28 U.S.C. § 2254(d).  ECF Dkt. #11 at 17-19. In his Traverse, Petitioner asserts that Respondent "is ignoring the plea agreement, which stated that the State would not recommend life in prison without parole." ECF Dkt. #13 at 4.

The undersigned recommends that the Court find that Petitioner's Ground for Relief Number 2 is meritless. In his federal habeas corpus petition, Petitioner cites to *Santobello v. New York*, 404

U.S. 257, 92 S.CT. 495, 30 L.Ed.2d 427 (1971) and argues that the trial court violated his constitutional rights by sentencing him to life in prison without the possibility of parole when the defense, prosecution and victim's family were all opposed to this sentence. ECF Dkt. #1 at 7. In his Traverse, Petitioner implies that the State violated his constitutional rights and breached the plea agreement "which stated that the State would not recommend life in prison without parole." ECF Dkt. #13 at 4.

The state court Judgment Entry of Plea and the plea hearing transcript belie Petitioner's claims. The Judgment Entry of Plea, signed by Petitioner, his counsel, the prosecutor, and thereafter the trial court on April 28, 2014, indicated all of the possible penalties for pleading guilty to aggravated murder, including life imprisonment without the possibility of parole, life imprisonment with parole eligibility after 20 years, life imprisonment with parole eligibility after 25 full years, and life imprisonment with parole eligibility after 30 full years. ECF Dkt. #11-1 at 8. The Judgment Entry of Plea further indicated that Petitioner was aware that the maximum prison sentence was life imprisonment without parole eligibility. *Id.* It also set forth the statement that "The State agrees not to argue or request a sentence of life without parole and the State pursuant to the negotiated plea agreement would and does request the Court to impose a sentence to one of the other three options and not that of life without parole." *Id.* at 9. The Judgment Entry of Plea thus confirms that the State did not recommend a sentence of life imprisonment without parole and Petitioner was aware that he was facing any of the potential sentences outlined in the form, including life imprisonment without the possibility of parole.

The transcript of the plea hearing also confirms that the State did not recommend life imprisonment without the possibility of parole. ECF Dkt. #11-2 at 5. The prosecutor specifically put on the record that "[p]art and parcel, if you will, of this negotiated plea agreement is that the State agrees not to argue or request a sentence of life without parole, and the State, pursuant to the negotiated plea agreement, would and does request the Court to impose a sentence to one of the other three options and that - - not that of life without parole." *Id.*

As to alleged trial court error in not "abiding" by the plea agreement and imposing a life sentence without parole, the undersigned recommends that the Court find that the Ohio appellate

-15-

court's determination on this issue is not contrary to or an unreasonable application of United States Supreme Court precedent or an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. The State appellate court cited Ohio law holding that plea agreements are not usually binding upon trial courts. ECF Dkt. #11-1 at 124-125. The appellate court reviewed the record of the plea hearing and held that the trial court made no communication or conduct that indicated its consent to be strictly bound by the sentencing recommendation and the trial court repeatedly and clearly told Petitioner that it was not so bound. *Id*. at 124. The Ohio appellate court also indicated that the trial court confirmed Petitioner's understanding that the trial court was free to impose a maximum sentence. *Id.*

The Sixth Circuit has held that:

> [A] federal court reviewing a state court plea bargain may only set aside a guilty plea or plea agreement which fails to satisfy due process .... If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea ... will be upheld on federal review.

*DeSmyther v. Bouchard*, No. 03-1419, 108 Fed. Appx. 364, 366 (6th Cir. Aug. 25, 2004), unpublished, quoting *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir.1980), *cert. denied*, 454 U.S. 840, 102 S.Ct. 148, 70 L.Ed.2d 123 (1981)). Ohio courts are not bound by the prosecution's recommendation in sentencing, even when the recommended sentence is used to induce a defendant to plead guilty. *Kelly v. Miller*, No. , 2011 WL 400150, at *9 (N.D. Ohio Jan. 7, 2011), citing *State v. Martinez*, No. 03MA196, 2004 WL 2913257, 2004–Ohio–6806 (Ohio App. 7th Dist. Dec. 10, 2004), unpublished, citing *State v. Buchanan*, 154 Ohio App.3d 250, 253, 796 N.E.2d 100 (Ohio App. 5th Dist. 2003), *State v. Mayle*, No.2002–A–0110, 2004 WL 936672, 2004–Ohio–2203 (Ohio App. 11th Dist. Apr. 30, 2004), unpublished, and *State v. Tucci*, No. 01 CA234, 2002 WL 31812895, 2002–Ohio–6903 (Ohio App. 7th Dist. Dec. 11, 2002), unpublished.

In this case, as found by the Ohio appellate court, the transcript of the plea hearing shows that the trial court thoroughly reviewed Petitioner's rights with him and the waiver of certain rights upon pleading guilty. ECF Dkt. #11-2 at 8-17. The trial court thoroughly inquired as to the voluntary, knowing, and intelligent waiver of those rights, specifically asking Petitioner if he understood that the court would consider any recommended sentence, but it was not required to

follow the recommended sentence. *Id.* at 8-9. The court asked, "And do you understand that any recommended sentence the Court will consider, but is not required to follow?" *Id.* Petitioner indicated that he understood. *Id.* The trial court informed Petitioner that there were four possible sentencing options to consider and specifically stated that "although the State and your - - and your counsel are recommending only three of them, they don't want the Court to consider that fourth, the Court still can consider that fourth option." *Id.* at 9-10. Petitioner indicated that he understood. *Id.* at 10. The court then went over factors that would be considered before sentencing Petitioner and repeated to Petitioner that, "I just want you to know that all four options are open to the Court, although they're recommending only three of them." *Id.* at 10. Petitioner again indicated that he understood. *Id.* The court asked if Petitioner had any questions as to its ability to consider all four sentencing options, including life without the possibility of parole. *Id.* Petitioner indicated that he had no questions.

The trial court thereafter informed Petitioner that he was pleading guilty to an unclassified felony of aggravated murder and informed him of the potential penalties, although the State already read them into the record. ECF Dkt. #11-2 at 12. The trial court notified Petitioner that he was facing life without parole, life with parole eligibility after 20 years, life with parole eligibility after 25 full years, and life with parole eligibility after 30 full years, and a fine of up to $25,000. *Id.* When asked if he understood the penalties, Petitioner indicated that he did. *Id.* The court asked again if Petitioner understood the four possible penalties that the court could impose, and Petitioner affirmed that he did. *Id.* at 12-13. Upon informing Petitioner of the rights that he was waiving upon pleading guilty, and Petitioner affirming that he understood those rights and that he was waiving them upon pleading guilty, the trial court again asked if Petitioner had any questions about the possible sentences or the plea agreement. *Id.* at 15-17. Petitioner responded that he did not. *Id.* at 17. The trial court asked Petitioner if he was forced or coerced into pleading guilty and he replied that he was not. *Id.* at 16. The court asked if Petitioner was entering his guilty plea voluntarily, knowingly and intelligently, and Petitioner responded that he was. *Id.* at 19. The court then asked Petitioner how he pled with regard to the aggravated murder unclassified felony and Petitioner responded that he was guilty. *Id.* at 20.

-17-

Based upon the transcript of the plea hearing and the Judgment Entry of Plea, the undersigned recommends that the Court find that the Ohio appellate's court's decision was not contrary to or an unreasonable application of United States precedent or an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. The appellate court cited Ohio law holding that plea agreements are generally not binding upon the court and it quoted portions of the plea hearing transcript showing that the trial court thoroughly reviewed the voluntary, intelligent and knowing waiver by Petitioner and his desire to enter into the plea agreement, and informed him repeatedly that it was not bound by the plea agreement or the sentencing recommendations and that court gave no statement or action indicating that the court was strictly bound to the terms of the plea agreement. ECF Dkt. #11-1 at 124-125. The Ohio appellate court also cited to the plea hearing transcript in finding that the trial court repeatedly told Petitioner that it was not bound by any recommended sentences and could consider the option of life imprisonment without the possibility of parole.

## C.  GROUNDS FOR RELIEF NUMBERS 3 AND 4- SENTENCING ISSUES

In Ground for Relief Number 3, Petitioner asserts that the trial court violated his equal protection and due process rights when it failed to make the required findings under Ohio Revised Code § 2929.19 when imposing the maximum sentence. ECF Dkt. #1 at 8. In particular, Petitioner contends that the trial court failed to find on the record that Petitioner committed one of the worst forms of the offense or that he posed the greatest likelihood of recidivism. *Id*. In his fourth ground for relief, Petitioner asserts that the his due process and equal protection rights were violated when the trial court failed to use mitigating factors at sentencing. ECF Dkt. #1 at 10; ECF Dkt. #13 at 5-6. Petitioner also asserts in his Traverse that the trial court violated *Apprendi v New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed2d 235 (2000), *Blakely v. Washington*, 542 U.S. 296, 1214 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed2d 621 (2005) by making findings on the record that were not found by a jury. ECF Dkt. #13 at 4. However, the undersigned recommends that the Court decline to address this new assertion presented for the first time in Petitioner's Traverse. *Tyler*, 416 F.3d at 504; *Myers*, 2017 WL 9476855, at *18. Thus, the undersigned limits review to the issues presented in Petitioner's third

-18-

and fourth grounds for relief presented in his federal habeas corpus petition.

The Ohio appellate court addressed Petitioner's assertion that the trial court erred in imposing the maximum sentence without making the statutorily-required findings. ECF Dkt. #11-1 at 125-127. It noted that the maximum sentence permissible by statute in Petitioner's case was life in prison without the possibility of parole. *Id.* at 125. The appellate court further held that the record showed that the trial court properly considered the seriousness and recidivism factors, as well as Petitioner's lengthy criminal history, recent history, and the extremely serious nature of the offense to which Petitioner pled guilty. *Id.* The Ohio appellate court concluded that the record failed to show that the trial court's imposition of the maximum sentence was clearly and convincingly contrary to law. *Id.*

As to Petitioner's assertion that the trial court ignored mitigating factors in sentencing him, the Ohio appellate court held that it did not comport with the evidence of record. *Id.*

The undersigned recommends that the Court find that Petitioner's third and fourth grounds for relief are not cognizable before this Court. A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984)*; Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir.1988). A federal court may review a state prisoner's habeas petition only on the grounds that the challenged confinement is in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a). "A challenge to a state court's interpretation and application of Ohio's sentencing laws is not cognizable in a federal habeas corpus action. *Howard v. White*, No. 03–1042, 2003 WL 22146139, at *2 (6th Cir.Sept.16, 2003); *Kipen v. Renico*, No. 02–1742, 2003 WL 21130033 (6th Cir. May 14, 2003); *see also Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir.1988) (citing cases) (federal court cannot review state's alleged failure to adhere to sentencing procedures). Accordingly, this Court can consider an alleged state court sentencing error only if it violates a petitioner's federal constitutional right to due process or equal protection. *Pulley*, 465 U.S. at 42.

Respondent alternatively asserts that even if these issues were cognizable, the Ohio appellate court's decision on these issues were not contrary to or unreasonable applications of United States Supreme Court precedent or unreasonable determinations of the facts of record. ECF Dkt. #11 at 22-

23. The undersigned agrees.  The Ohio appellate court reviewed the trial court's maximum sentence of life imprisonment without the possibility of parole and found that the sentence fell within the permissible range for the crime to which Petitioner pled guilty.  ECF Dkt. #11-1 at 125.  The appellate court also found that the trial court did in fact consider the factors of seriousness and recidivism and facts mitigating Petitioner's sentence.  *Id.* at 125.  The transcript of the sentencing hearing confirms that the trial court specifically addressed at length the seriousness of the offense, recidivism, and mitigating factors.  ECF Dkt. #11-3 at 198.  The court indicated that it had received Petitioner's mitigation brief and had reviewed it.  *Id*. at 9-10.  A mitigation specialist also testified at the sentencing.  *Id*. at 46-75.

The trial court indicated that it had four sentencing options and had to review the purposes and principles of sentencing under ORC § 2929.12.  The court went through each applicable factor under ORC § 2929.12, including a review of the factors to determine whether the offense committed by Petitioner was more serious than others.  *Id*. The trial court stated that it considered ORC § 2929.12(B)(1) and determined that the physical or mental injury suffered by the victim in Petitioner's case was exacerbated because the age of the victim was three years old.  *Id*. The court considered ORC § 2929.12(B)(2) and determined that the victim suffered physical harm and psychological harm as a result of the offense because he suffered serious bodily harm and psychological harm in the last moments of his life.  *Id.* at 198-199.  The trial court looked at ORC § 2929.12(B)(6) and found that Petitioner's relationship with the victim facilitated the offense, since Petitioner dated the victim's mom for two years and she left the victim in Petitioner's care and he acted in loco parentis by disciplining the victim.  *Id*. at 199. The trial court also looked at mitigating factors that would show that the offense was not that serious, such as whether the victim induced or facilitated the offense, which the court found that victim did not since he was only three years old.  *Id*. at 199-200.  The court looked at whether Petitioner caused or expected to cause physical harm in committing the offense, which the court found that Petitioner did since he had admitted to his mother that he punched the three year-old child in the stomach twice.  *Id.*  The court additionally considered whether Petitioner acted under strong provocation in committing the offense, which the court found could have happened based upon the psychologist's testimony concerning Petitioner's

-20-

genetics and environment. *Id.* The trial court considered whether there were substantial grounds to mitigate Petitioner's conduct, which the court also found favored Petitioner based upon the psychologist's testimony. *Id.*

The trial court also considered the possibility as to whether Petitioner would commit future crimes, looking to ORC § 2929.12(D), which considered whether Petitioner was under release confinement before trial or sentencing or another sanction, such as post-release control. ECF Dkt. #11-3 at 201. The court noted that Petitioner was placed on probation in Florida and thus was under some kind of sanction when he committed the instant offense. *Id.* at 201-202. The court looked at ORC § 2929.12(D)(2) as well, which considered whether Petitioner was previously adjudicated a delinquent child, which he was. *Id.* at 202. The trial court found that Petitioner had not been rehabilitated since his prior delinquent child adjudication and had not responded favorably to sanctions because his adult record showed numerous community control sanctions, community service, jail time, and suspended jail time. *Id.* The court additionally looked at ORC § 2929.12(D)(4) and found that Petitioner demonstrated a pattern of drug or alcohol abuse that was related to the offense and he had refused to acknowledge a problem with drugs and alcohol and refused past treatment for it. *Id.* at 203. The trial court further indicated that Petitioner showed no genuine remorse for the offense. *Id.* The court also explained that it considered the psychologist's report and testimony and all of the other relevant factors in the sentencing hearing, as well as the presentence report and investigation. ECF Dkt. #11-3 at 203.

The trial court also indicated on the record that it had considered the factors that would show that it was not likely that Petitioner would commit future crimes as required by Ohio Revised Code 2929.12(E), including whether Petitioner had not been adjudicated a delinquent child, which Petitioner had. ECF Dkt. #11-3 at 204. The trial court considered whether Petitioner had not been convicted or plead guilty to a criminal offense prior to committing the instant offense, or whether he had led a law-abiding life for a significant number of years. *Id.* The court found that Petitioner did not. *Id.* The court considered whether the offense was committed under circumstances not likely to reoccur, and the court found that this was not true since the victim was found to have prior bruises and injuries for a long time prior to the instant offense. *Id.* The court reiterated that it had

-21-

also looked at the presentence investigation and report, as well as the other documents received prior to and during the sentencing hearing. *Id*. at 204-205.

The trial court also considered whether Petitioner took responsibility for his actions, noting the many different stories that Petitioner told concerning the injuries to the victim, such as when he stated that the child just collapsed, then stated that the child was running and fell and hit his head on a toy, and then stating that the victim had defecated in his pants and Petitioner got upset. ECF Dkt. #11-3 at 205. The court also noted Petitioner's other explanations for injuries, such as when he stated that another person may have inflicted the injuries, and that the a neighbor who performed CPR on the victim may have caused his injuries and death. ECF Dkt. #11-3 at 205. The trial court acknowledged that Petitioner then eventually admitted his guilt, but then stated that he was taking Percocets. *Id*. at 206. The court also explained that it was the one that sentenced the victim's mother in this case as well, and Petitioner had also explained that the victim's injuries were caused by bug bites, the victim had fallen off of his rocking horse, he had hit his head with a Nerf gun, and Petitioner's giving of a haircut to the victim caused the injuries. *Id.* The court noted that Petitioner even blamed the mother of the victim, suggesting that she was hitting the victim when Petitioner was not around. *Id.* The court also noted the victim's many doctor visits for injuries and various explanations for those injuries. *Id.* at 207-208. The trial court also noted the circumstances found at the scene of the victim's injuries, indicating that reports from the scene stated that Petitioner's shirt was found with blood on it in the washer and blood found on the toilet and sink area indicated that an attempt was made to wipe the blood off of the child and cover up the evidence. *I*d. at 207.

The court also placed on the record the numerous past and present injuries indicated on the autopsy report, including external blunt injuries, perforation of the right atrium, thymatic contusions, pulmonary contusions, hermarthrosis, lacerations and contusions of the mesentery, liver laceration, multiple external contusions of various ages, multiple abrasions of the head and the face and abrasions at the urethral opening. ECF Dkt. #11-3 at 208-209. The trial court emphasized that the cause of death was reported not as blunt trauma, but multiple blunt force trauma. *Id.* at 209. The court indicated that the doctor stated in his report that the bruises were so extensive that he referred the reader to photographs of the victim for full detail, which included external bruising to the

victim's face, cheek, head, upper abdomen, chest, lower legs, back, lower spine, ears, and back of his legs. *Id.* The trial court referred to the coroner, who reported trauma to the scalp, face, chest, abdomen, penis, back, upper and lower extremities, heart, lungs, small bowels, appendix, large bowels, and the buttocks. *Id.* at 210.

The court further referred to the State's presentation of prior interactions between Petitioner and the victim, where a witness indicated that on one occasion, the victim had a gash on his face under his eye and other cuts on his face, and Petitioner said that he and the victim were stick fighting and the victim got hurt. ECF Dkt. #11-3 at 210. The court referred to another incident in which the victim had razor burns all over his head and the witness said that the victim was just laying on the bed and would not get up, and Petitioner said that he was shaving the victim's head and the guard on the clippers came off and nicked the victim's head. *Id.* at 210-211. The witness also reported a third incident, where the victim had bruises all over his head and Petitioner said that the victim was hitting himself in the head with the Nerf gun and was having a temper tantrum, although the victim's mother said the victim never had tantrums. *Id.* at 211. The witness reported that the victim would not even play with other kids that day and kept having to go and lay down. *Id.* The witness further reported that the victim was always afraid to leave with Petitioner and she told the victim's mother this and that the mother should set up cameras because something was not right. *Id.* at 212.

The court also referred to a jail visit in which Petitioner stated that he was going to cut the prosecutor's throat because he did not believe Petitioner that it was involuntary manslaughter. ECF Dkt. #11-3 at 213. The court noted that Petitioner also said that he was going to stab someone to get put on death row once he got to prison. *Id.* The court indicated that Petitioner also said that the victim was not his child and he had no reason to watch him when he was sick. *Id.* The trial court also considered Petitioner's behavior in jail, indicating that he called a nurse aggressive names, threatened a corrections officer, and authorities found a hole in Petitioner's cell wall where he was digging and they found contraband in his cell on two occasions. *Id.* The court further noted recent incidents where Petitioner had a verbal fight with another inmate, contraband was again found in his cell, he destroyed prison property, and rivets from the jail fire alarm were found in his cell. *Id.* at 214. Petitioner had also refused medication. *Id.*

-23-

Based upon this extensive record and explanation by the trial court, the Ohio appellate court found that the trial court's maximum sentence was not contrary to law and his assertion that the trial court ignored mitigating factors was without merit.  The undersigned agrees and recommends that the Court find that the Ohio appellate court's decision on these issues was not contrary to or an unreasonable application of United States Supreme Court precedent or an unreasonable determination of the fact in light of the evidence presented.

### D.      GROUND FOR RELIEF NUMBER 5- SENTENCING ISSUE

Petitioner also asserts that his rights to due process and equal protection were violated when the trial court considered items at his sentencing that were not in the record.  ECF Dkt. #1 at 12.  He contends that the trial court's references to a Florida matter, the coroner's report, and incidents at the jail and reports by his prior counsel and witness were not in the record and therefore not subject to review by the trial court in determining his sentence.  *Id.*

As recommended in Grounds for Relief Numbers 3 and 4, this issue relating to sentencing is also not cognizable before this Court.  In addition, the undersigned recommends that the Court find that the Ohio appellate court's decision as to this matter was not contrary to or an unreasonable application of United States Supreme Court precedent or an unreasonable application of the facts in light of the evidence presented in the state court proceeding.

The Ohio appellate court addressed this assertion by Petitioner, finding that the record did not support Petitioner's assertions.  ECF Dkt. #11-1 at 127-128.  The court found that the record showed that the items that the trial court considered were incorporated into the presentence investigation report which was made part of the record.  *Id.* The Ohio appellate court cited Ohio Revised Code § 2929.19(B)(1) as enabling a sentencing court to consider the presentence investigation report.  *Id.* at 128.

Petitioner does not dispute the veracity of the information used in the presentence report and does not assert that the presentence report did not contain the complained about items.  ECF Dkt. #1 at 12.  Rather, he challenges the fact that the trial court considered "items at the sentencing hearing that were not in the record."  *Id.*  He also asserts that these items contained hearsay.  *Id.*

-24-

The Ohio appellate court found that Ohio Revised Code § 2929.19(B)1) explicitly enables a sentencing court to consider the presentence investigation report.  This federal habeas court is bound by the state court's interpretation of state law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ( [A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.") (citing *Estelle*, 502 U.S. at 67-68, *Mullaney v. Wilbur*, 421 U.S. 684, 691, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) ). Moreover, Petitioner does not dispute the Ohio appellate court's finding in his case that the items about which he complains were contained in the presentence report and that report was incorporated by the trial court into the record at the sentencing hearing.  Accordingly, Petitioner is unable to demonstrate that the trial court failed to follow Ohio statutory law and his assertion is without merit.

### E.     GROUND FOR RELIEF NUMBER 6 - PRE-PLEA ISSUE

Petitioner asserts in this ground for relief that the his due process and equal protection rights were violated when the trial court failed to rule on his motion to dismiss the aggravating circumstances attached to Count One of his indictment.  ECF Dkt. #1 at 12-13.  He contends that he was:

> charged with a violation of the so-called child victim subsection of R.C. 2903.01, the aggravated murder statute:  "No person shall purposely cause the death of another who is  under  thirteen  years of age at the time of the commission of the offense."  R.C. 2903.01.  In addition to this underlying charge, the prosecuting attorney obtained a death  penalty specification under R.C. 2929.04(A)(9) without the addition of  a  single  new element.  Thus denying Petitioner his right of due process & equal  protection of law.  The State  is assuming that Petitioner is the principal  offender based only on Prosecutor's assumption of  this allegation.  In other  words Petitioner is charged with murder of a child with one penalty being life in prison, the other death in an arbitrary manner with no equal protection or  due process of law.  This arbitrary law also violates Petitioner's Eighth Amendment right against cruel and unusual punishment in that it does not narrow the class of people eligible for the death penalty.  This error of law was compounded by the trial judge refusing to rule upon this motion.

*Id.*

The undersigned is not exactly sure of Petitioner's argument.  Nevertheless, any challenge to a motion that he filed concerning dismissal of the death penalty specification prior to entering his guilty plea was waived by his guilty plea.  "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter

raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). Accordingly, after the entry of an unconditional guilty plea, the defendant may challenge only the court's jurisdiction and the voluntary and intelligent character of the plea itself. *United States v. Ferguson*, 669 F.3d 756, 763 (6th Cir.2012). Petitioner's instant ground for relief does not challenge the court's jurisdiction or the nature of his guilty plea. Moreover, the death penalty specification to Count One was dismissed by the State upon Petitioner's plea of guilty to aggravated murder. ECF Dkt. #11-1 at 8.

For these reasons, the undersigned recommends that the Court decline to address this ground for relief because Petitioner has waived the right to raise it and the death penalty specification upon which this ground for relief is based had been dismissed upon the entering of Petitioner's guilty plea.

## VII.    CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the Court find no merit to Petitioner's first and second grounds for relief. The undersigned further recommends that the Court find that Petitioner's Grounds for Relief Numbers 3, 4, and 5 are not cognizable in federal habeas corpus because they are sentencing issues. However, even if these Grounds for Relief were cognizable, the undersigned recommends that the Court find that the Ohio appellate court's decision on these matters was not contrary to or an unreasonable application of federal law as determined by the Supreme Court of the United States or an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Finally, the undersigned recommends that the Court decline to review Petitioner's Ground for Relief Number 6 because he waived the right to raise such an issue as it preceded his guilty plea and is not related to the court's jurisdiction or the validity of his guilty plea. Moreover, the issue presented in this Ground for Relief concerning a death penalty specification was dismissed upon the entering of Petitioner's guilty plea.

-26-

Accordingly, the undersigned recommends that the Court DISMISS the instant petition in its entirety with prejudice. ECF Dkt. #1.

DATE: December 10, 2018                    */s/ George J. Limbert*
                                           GEORGE J. LIMBERT
                                           UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).